IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**JENNIFER BELCHER,**
**Claimant Below, Petitioner**

**FILED**
**September 5, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 23-ICA-61**          (JCN: 2022011725)

**WEST VIRGINIA PARKWAYS AUTHORITY,**
**Employer Below, Respondent**

### MEMORANDUM DECISION

Petitioner Jennifer Belcher appeals the January 26, 2023, order of the Workers' Compensation Board of Review ("Board"). Respondent West Virginia Parkways Authority ("WVPA") filed a timely response.[1] Petitioner did not file a reply. The issue on appeal is whether the Board erred in affirming the claim administrator's order denying the claim for workers' compensation benefits.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

At the outset, we note that Ms. Belcher, a toll collector, has an extensive history of symptoms relating to her right shoulder dating back to 2006 and symptoms in her left knee dating back to 2018. In August of 2015, x-rays taken of Ms. Belcher's right shoulder revealed a trabecular pattern of the right distal clavicle, and an MRI of the right shoulder obtained in December of 2015 revealed a tear of the posterior inferior labrum and a para-labral cyst. Ms. Belcher sought treatment at emergency departments for complaints of pain in her right shoulder at least twice in 2016 and was evaluated by a chiropractor in November of 2016 and complained of pain in her low back, neck, right arm, and right shoulder, and left leg sciatica.

Ms. Belcher sought treatment at an emergency department for complaints of knee pain in June of 2018. Ms. Belcher returned to the emergency department in July of 2018, complaining of pain in her right shoulder. Ms. Belcher reported that she had a rotator cuff

---

[1] Ms. Belcher is represented by Reginald D. Henry, Esq., and Lori J. Withrow, Esq. West Virginia Parkways Authority is represented by Steven K. Wellman, Esq., and James W. Heslep, Esq.

1

tear two years prior and that she was now experiencing worsening pain. Ms. Belcher again sought treatment at the emergency department in August of 2018, complaining of chronic right shoulder pain. Ms. Belcher attributed her issues to the repetitive motion of opening a toll booth while employed for WVPA.[2]

In early 2020, Ms. Belcher sought workers' compensation benefits due to an injury to her left knee that occurred on December 27, 2019. Ms. Belcher reported that she fell off of a curb and hyperextended her left knee. Ms. Belcher underwent an MRI of her left knee in March of 2020. The report indicated that Ms. Belcher reported falling a few months prior and had experienced persistent pain and swelling. On April 1, 2020, the claim administrator held that claim compensable for left knee sprain.

Ms. Belcher underwent an independent medical evaluation ("IME") for her left knee claim on July 22, 2020, performed by Robert Kropac, M.D. Dr. Kropac opined that Ms. Belcher had reached maximum medical improvement with no permanent impairment.

Ms. Belcher returned to a chiropractor in February of 2021, complaining of pain in her cervical spine and shoulders. In August of 2021, Ms. Belcher underwent an MRI of her right shoulder. The report indicated that the labral tear was still present, but that the cyst was much smaller than it had been. No rotator cuff tear was observed. A few weeks later, Ms. Belcher returned to the chiropractor and complained that her neck and shoulder pain had worsened.

On September 1, 2021, Ms. Belcher treated with Bart Eastwood, D.O., and complained of right shoulder pain. Dr. Eastwood performed a large joint arthrocentesis procedure and diagnosed right shoulder instability. Also during September of 2021, Ms. Belcher participated in physical therapy and reported complaints of right shoulder pain and instability that radiated into her arm and tingling. Later in September, Ms. Belcher treated with Physician's Assistant Bryan Stafford for complaints of right shoulder pain. Mr. Stafford diagnosed right shoulder pain and fibromyalgia.

Ms. Belcher continued to participate in physical therapy throughout October of 2021. On October 20, 2021, Ms. Belcher returned to Dr. Eastwood, reporting only mild relief from physical therapy. Dr. Eastwood diagnosed a Bankart lesion, shoulder instability, and chronic right shoulder pain, and discussed the possibility of surgery with Ms. Belcher. Ms. Belcher agreed to the surgery when she could fit it into her work schedule.

Turning to the alleged injury at issue in this appeal, Ms. Belcher completed an Employees' and Physicians' Report of Occupational Injury dated November 10, 2021. Ms. Belcher reported that she injured her right shoulder and left knee by picking up a chair. The

---

[2] Ms. Belcher never sought workers' compensation benefits for her right shoulder based on those allegations.

physicians' section indicated a diagnosis of sprain of unspecified site of the left knee and sprain of right shoulder and noted that the injury aggravated Ms. Belcher's preexisting labral tear. Later that same day, Ms. Belcher returned to see Dr. Eastwood and reported that she injured her right shoulder and left knee when she was attempting to carry a chair back and forth between some toll booths.[3] Dr. Eastwood noted a new diagnosis of right shoulder strain and patellar tendinitis of the left knee, and stated he discussed "proceeding with the posterior Bankart repair surgery exacerbated by this new strain."

At a physical therapy session on December 9, 2021, Ms. Belcher reported complaints of right shoulder pain and instability that radiated into her arm and tingling. She also reported "new onset of [left] knee pain after injury at work" and that her "shoulder pain was also exacerbated with lifting the stool." On February 21, 2022, the claim administrator rejected the claim, finding that there was no new injury and only an aggravation of a preexisting condition.

On April 1, 2022, Ms. Belcher underwent an arthroscopic posterior inferior Bankart repair. The preoperative and postoperative diagnoses were right shoulder instability posterior with Bankart tear. On April 5, 2022, Sherry Lilly, the Director of Human Resources for WVPA, signed an affidavit wherein she indicated that Ms. Belcher had taken off work from May 2021 through August 2021 under the Family Medical Leave Act ("FMLA") for nonoccupational cervical nerve protrusion and nerve root compression. Specifically, Ms. Lilly stated Ms. Belcher exhausted her FMLA leave time on June 18, 2021, and was on an unpaid leave of absence until August 28, 2021. According to Ms. Lilly, Ms. Belcher contacted her on August 25, 2021, and informed her that she might need additional time off due to a tear in her shoulder and that surgery was being discussed as a treatment option. Ms. Lilly further stated Ms. Belcher also emailed her on November 5, 2021, asking about her prior workers' compensation claim related to her left knee and advising that it was becoming bothersome. Ms. Lilly questioned the alleged injury of November 10, 2021, given Ms. Belcher's prior inquiries regarding taking additional time off and her prior claim. Ms. Lilly noted that she reviewed security footage on the day of the alleged injury and did not see any evidence of an acute injury.

Ms. Belcher testified via deposition in July of 2022. Regarding the 2015 x-ray of her right shoulder, Ms. Belcher claimed that she had injured it while working for WVPA but did not report the injury for fear of being fired. Ms. Belcher also admitted to receiving treatment and benefits in a prior workers' compensation claim for her left knee. Ms. Belcher further testified that she sought treatment from Dr. Kominsky and Dr. Eastwood prior to the instant alleged injury due to complaints of pain and a knot that appeared between her neck and shoulder. Ms. Belcher acknowledged that she had agreed to surgical

---

[3] It is unknown whether this appointment was made in reference to the alleged occupational injury or a scheduled follow-up from her prior appointment with Dr. Eastwood.

3

repair of her Bankart lesion prior to the alleged injury, but stated she had no restrictions and was working regularly and performing her duties without issue. Ms. Belcher testified to the instant alleged injury and subsequent treatment. She denied having any left knee pain prior to the November 10, 2021, alleged injury.

Treatment notes from Dr. Eastwood dated July 9, 2022, indicated his belief that the alleged November 10, 2021, injury exacerbated Ms. Belcher's shoulder instability and posterior Bankart tear. Subsequently, on November 15, 2022, Ms. Belcher underwent an IME performed by David L. Soulsby, M.D. Dr. Soulsby opined that Ms. Belcher's chronic labral tear and chondromalacia patella in the left knee preexisted the alleged injury, and that he found no evidence of a new, discrete injury in the instant claim. He further opined that there was no evidence of an aggravation or progression of Ms. Belcher's preexisting conditions. Regarding the right shoulder, Dr. Soulsby noted that Ms. Belcher had complaints of pain dating back to at least December 2015 and continued to seek treatment for those symptoms in the months leading up to the alleged injury. Dr. Soulsby stated that where there were symptoms present, activity may have caused a temporary exacerbation of symptoms without contributing to an aggravation or progression of the underlying pathology. Regarding the left knee, Dr. Soulsby stated Ms. Belcher's current complaints were similar to her complaints following her injury to that knee in 2019 and that physical examination did not suggest any progression. Dr. Soulsby also reviewed the security footage and opined that there was no indication Ms. Belcher was having any difficulty in her right shoulder or left knee on the day of the alleged injury. Lastly, Dr. Soulsby indicated that the history given by Ms. Belcher was suggestive of exaggeration or magnification.

By order dated January 26, 2023, the Board affirmed the claim administrator's order rejecting the claim. Citing *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016) and *Moore v. Tygart Valley, LLC*, 247 W. Va. 292, 879 S.E.2d 779 (2022)[4], the Board found that the evidence failed to demonstrate a causal connection between Ms. Belcher's right shoulder and left knee conditions and the alleged injury. The Board considered Ms. Belcher's extensive history of symptoms in her right shoulder and left knee; that she took time off work during the summer leading up to the alleged injury; that she contacted Ms. Lilly prior to the alleged injury about taking additional time off due to the labral tear in her shoulder; that she contacted Ms. Lilly again prior to the alleged injury complaining of her of symptoms in her left knee; and that she noted her intent to undergo surgery when she could fit it into her work schedule prior to the alleged injury.

---

[4] Per *Moore*, "[a] claimant's disability will be presumed to have resulted from the compensable injury if: (1) before the injury, the claimant's preexisting disease or condition was asymptomatic, and (2) following the injury, the symptoms of the disabling disease or condition appeared and continuously manifested themselves afterwards." 247 W. Va. at __, 879 S.E.2d at 781, syl. pt. 5, in part. Ms. Belcher acknowledges that she is not entitled to the presumption under *Moore* because she was symptomatic prior to her alleged injury.

The Board further found that the medical records established that Ms. Belcher reported the same symptoms in the right shoulder and left knee both before and after the alleged injury, which diluted the credibility of the claim. The Board noted that medical providers did not document any new clinical findings after the alleged injury that had not already been considered. According to the Board, Ms. Belcher's credibility was further diminished by the fact that she was aware that she needed surgery in her right shoulder prior to the alleged injury but did not want to schedule the surgery until she had available leave. The Board concluded that there were "too many discrepancies in the evidence presented in this claim to support the credibility of [Ms. Belcher's] application and the compensability of the claim." Ms. Belcher now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff v. Kanawha Cnty. Comm'n*, 247 W. Va. 550, 555, 882 S.E.2d 916, 921 (Ct. App. 2022).

On appeal, Ms. Belcher argues that the Board was clearly wrong in affirming the claim administrator's order rejecting her claim as she met her burden of proof in demonstrating that she sustained an injury in the course of and resulting from her employment. According to Ms. Belcher, she consistently described her injury and was forthcoming regarding her previous injuries. Ms. Belcher contends that the emergency department medical staff diagnosed her with a sprain/strain injury to her right shoulder and her left knee, and Dr. Eastwood also described new diagnoses. Ms. Belcher avers the Board erred by finding she lacked credibility because she had preexisting conditions and improperly gave more weight to Ms. Lilly's affidavit than Ms. Belcher's testimony. Ms. Belcher acknowledges that she does not meet the presumption set forth in *Moore*, but

argues that she established that she suffered a discrete new injury that, per *Gill*, should have been held compensable. We disagree.

Upon review, we find no error in the Board's findings rejecting Ms. Belcher's claim. In order for a claim to be held compensable under the Workers' Compensation Act, three elements must coexist: (1) A personal injury, (2) received in the course of employment, and (3) resulting from that employment. *Jordan v. State Workmen's Comp. Comm'r*, 156 W.Va. 159, 163, 191 S.E.2d 497, 500 (1972). The Supreme Court of Appeals of West Virginia ("SCAWV") has set forth a general rule that:

> A noncompensable preexisting injury may not be added as a compensable component of a claim for workers' compensation medical benefits merely because it may have been aggravated by a compensable injury. *To the extent that the aggravation of a noncompensable preexisting injury results in a [discrete] new injury, that new injury may be found compensable.*

*Gill*, 236 W. Va. at 738, 783 S.E.2d at 858, syl. pt. 3 (emphasis added).

Here, Ms. Belcher fails to demonstrate that she sustained a compensable injury in the course of and resulting from her employment. Ms. Belcher acknowledges that she has a history of symptoms in her right shoulder and left knee, but claims that she sustained a discrete new injury that, per *Gill*, should have been held compensable. However, we find that the Board set forth sufficient findings of fact and conclusions of law to conclude that Ms. Belcher failed to meet her burden of proof in this regard. While Ms. Belcher was diagnosed with sprains/strains by emergency department personnel and Dr. Eastwood, the Board noted that Ms. Belcher's complaints remained the same both prior to and after the alleged injury. Contrary to Dr. Eastwood's diagnosis of a new sprain, Dr. Soulsby found that there was no indication that an acute injury occurred, nor that Ms. Belcher's preexisting conditions were aggravated. Further, Ms. Belcher's course of treatment did not change following the alleged injury.

Moreover, the Board found that Ms. Belcher's claims lacked credibility. The Board noted that Ms. Belcher complained of pain in her right shoulder and left knee in the weeks and months leading up to the alleged injury; that she twice spoke to Ms. Lilly prior to the alleged injury about needing additional time off due to her preexisting injuries; and that, in October of 2021, Ms. Belcher delayed undergoing surgery because she did not have sufficient leave at the time. Further, both Ms. Lilly and Dr. Soulsby reviewed security footage of Ms. Belcher's shift, and neither observed any acute injury or any indication that Ms. Belcher was having difficulty or in pain. Indeed, Dr. Soulsby opined that Ms. Belcher was likely exaggerating or magnifying her symptoms. While Ms. Belcher takes issue with the Board finding her not credible, we find that this conclusion is based upon sufficient evidence in the record, and we decline to disturb any credibility determinations made by the Board. *See Martin v. Randolph Cnty. Bd. of Educ.*, 195 W. Va. 297, 306, 465 S.E.2d 399, 408 (1995) ("We cannot overlook the role that credibility places in factual

6

determinations, a matter reserved exclusively for the trier of fact. We must defer to the ALJ's credibility determinations and inferences from the evidence . . . .").

Given Ms. Belcher's extensive preexisting conditions, the Board's credibility determination, and the fact that Ms. Belcher's symptoms were the same both prior to and after the alleged injury, we cannot find that the Board clearly erred in rejecting her claim as there is sufficient evidence in the record to support a finding that no discrete new injury occurred. Accordingly, we affirm the Board's January 26, 2023, order.

Affirmed.

**ISSUED:** September 5, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen

Judge Thomas E. Scarr, not participating.